# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| TRAVIS ANTWAN ROBERSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV416-196 |
| | ) | CR414-100 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

After pleading guilty to carrying a firearm during and in relation to a drug trafficking offense, (doc. 25 (plea agreement)[1], doc. 26 (judgment)), Travis Antwan Roberson moves under 28 U.S.C. § 2255 to vacate his conviction. Doc. 45. Preliminary review under Rule 4 of the Rules Governing Section 2255 Proceedings shows that his motion must be denied.

---

[1] All citations are to the criminal docket unless otherwise noted and all page numbers are those imprinted by the Court's docketing software.

## I. BACKGROUND

Indicted for "carrying a firearm during and in relation to" possessing marijuana with intent to distribute,[2] and possession of a firearm with an obliterated serial number (doc. 1 at 1-3), Roberson eventually pled guilty to the carrying charge alone. Doc. 25 at 1 ("Defendant agrees to enter a plea of guilty to . . . Carrying/Possessing a Firearm During or in Furtherance of Drug Trafficking Crime."). More specifically, he admitted that he "(1) . . . committed the drug trafficking charge as charged in Count One of the indictment; (2) . . . knowingly possessed a firearm; and (3) . . . possessed the firearm 'in furtherance of' the drug trafficking crime." *Id.*

At his change of plea hearing, both the prosecutor (doc. 44 at 6) and sentencing judge reiterated that he was pleading to "carrying firearms during and in relation to drug trafficking." *Id.* at 25, 26. The judge also detailed what the Government would have to prove if Roberson decided

---

[2]  The heading for Roberson's indictment's carrying count reads: "Carry Firearms During and in Relation to Drug Trafficking." Doc. 1 at 2. The count's factual meat, however, alleged that he "knowingly and unlawfully, and *in furtherance of* the drug trafficking offense charged in Count One, *possessed* the following firearms. . . ." *Id.* (emphasis added).

to go to trial: "first, your identity must be proven, that you are the person named in the indictment, and you committed a drug trafficking offense as identified in Count 2 of the indictment, that is, I believe, on December the 11th of last year, and you knowingly possessed a firearm; and lastly, you possessed the firearm *in furtherance of* a drug trafficking offense." *Id.* at 26 (emphasis added). When asked if he understood the impact of a guilty plea, the crime to which he pled, and the elements of that crime, Roberson answered affirmatively each time. *See id.* at 25-26.

At sentencing, the judge reviewed the plea proceedings and again noted that Roberson pled guilty to "carrying firearms during and in relation to a drug trafficking offense." Doc. 35-1 at 5. The Presentence Investigation Report -- to which he lodged no objections, *id.* at 5 ("THE COURT: Is there anything in that report that you question or wish to restate or anything of that nature? THE DEFENDANT: No.") -- and the Court's Judgment (doc. 26), revealed the same. His 96-month sentence exceeded the Sentencing Guidelines recommended range, so Roberson escaped his appeal waiver. Doc. 25 at 7. "On appeal, Roberson argue[d] that the district court did not properly explain its reasoning in imposing

[an] upward variance and that his sentence [was] substantively unreasonable." *United States v. Roberson*, 615 F. App'x 648, 648 (11th Cir. 2015). He raised no concerns about the precise charge to which he pled guilty. The appeal failed, and despite the collateral attack waiver in his plea agreement (doc. 25 at 7),[3] Roberson then timely filed the present motion. Doc. 45.

## II. ANALYSIS

Liberally construing that motion,[4] Roberson raises two claims. First, he argues that he didn't understand his guilty plea because the § 924(c) crime he pled to, and the crime described by the sentencing judge at his plea hearing, differ from his indictment. Doc. 46 at 9. Piggybacking off that, he also contends that his appellate counsel

---

[3] Roberson "entirely waive[d] his right to collaterally attack his conviction and sentence on any ground and by any method, including . . . a 28 U.S.C. § 2255 motion." Doc. 25 at 7. Claims, like Roberson's, that attack a plea's validity, however, escape plea-based waivers. *See Patel v. United States*, 252 F. App'x 970, 974 (11th Cir. 2007) (appeal waivers do not bar claims in § 2255 motions that hit at a plea agreement's validity).

[4] *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted).

provided ineffective assistance by not raising an unintelligent plea issue on appeal. *Id.* at 12. Both claims fail.

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)." *Bousley v. United States*, 523 U.S. 614, 618 (1998). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charges against him. . . .'" *Id.* If, prior to pleading to guilty, a defendant receives a copy of his indictment, a presumption arises that he "was informed of the nature of the charge against him." *Id.* Post-indictment/pre-plea misinformation, however, can make a plea "constitutionally invalid." *Id.* at 619.

In *Bousley*, the defendant was charged under § 924(c)[5] with using a firearm in relation to a drug offense. *Id.* at 617. In a subsequent § 2255

---

[5] Under 18 U.S.C. § 924(c)(1)(A):

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --

motion, he claimed that no evidence connected the gun found in his bedroom with the drugs found in the garage. *Id.* While he appealed, the Supreme Court held that "use" for purposes of § 924(c) required "active employment of the firearm." *Id.* (quoting *Bailey v. United States*, 516 U.S. 137, 144 (1995)). Bousley then claimed that he unintelligently pled guilty because the sentencing court, pre-*Bailey*, effectively misinformed him about the meaning of "use" in § 924(c) despite his receipt of the indictment before pleading. *Id.* at 617-18. The Supreme Court agreed, but it held that he procedurally defaulted any claim challenging his plea by not raising it on direct appeal and the Court then remanded for the lower courts to consider whether Bousley could prove actual innocence to excuse his default. *Id.* at 623.

Roberson makes a species of that argument here, though no *Bailey*-type decision intervened to sow confusion. Instead, he insists that his indictment and judgment -- which read "carry firearms during and in relation to drug trafficking" (doc. 1 at 2; doc. 26 at 1) -- differ from his plea agreement ("carrying/possessing a firearm during or in furtherance

---

(i) be sentenced to a term of imprisonment of not less than 5 years.

of drug trafficking crime," doc. 25 at 1), and some of the sentencing judge's statements at the plea hearing. *See, e.g.*, doc. 44 at 26 (using "in furtherance" language to describe the charge Roberson pled to).

Although it's true that a defendant may be charged with using or carrying a firearm "during and in relation to . . . [a] drug trafficking crime," or with possessing one "in furtherance of any such crime" (or, potentially, both),[6] Roberson unquestionably understood the crime to which he pled guilty. Count Two of his indictment, which he saw before he pled, charged a "carrying . . . during and in relation to" offense *and* alleged that he possessed seven firearms "in furtherance of the drug trafficking offense charged in Count One." Doc. 1 at 2; *Bousley*, 523 U.S. at 618 (presumption of notice from receipt of indictment). His plea agreement, which Roberson admitted "understand[ing] each provision"

---

[6] *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Timmons*, 283 F.3d 1246, 1251 (11th Cir. 2002) (recognizing that § 924(c) contains two separate offenses and affirming convictions for carrying in relation to and in furtherance of a drug trafficking crime); *Shepard v. United States*, 2015 WL 5834021 at * 6 (M.D. Ala. Oct. 6, 2015) ("There are two ways to violate 18 U.S.C. § 924(c): either by (1) using or carrying a firearm during and in relation to a drug trafficking crime or (2) possessing a firearm in furtherance of a drug trafficking crime.") (citing *Timmons*, 283 F.3d at 1250-53).

of and "voluntarily agree[ing] to" (doc. 25 at 10),[7] also contained both "carrying" and "possessing" language. *Id.* at 1. Put differently, Roberson admitted to both crimes after receiving notice of his charges via an indictment that charged both versions of a § 924(c) offense. For him to now claim confusion because the two documents' wording (but not substance) differs slightly, is disingenuous.

Compounding his claim's inanity, the Government, at the plea hearing before Roberson ever spoke, clarified for the sentencing judge (who initially thought that the proceeding involved only a drug trafficking offense) that he was pleading to "carrying firearms during and in relation to drug trafficking." Doc. 44 at 6. And Roberson himself confirmed repeatedly that he understood the charge, its elements, and the possible sentence he faced. *See id.* at 25, 26. What's more, his attorney revealed to the Court that "Roberson is intelligent," and had "been researching the law," even providing counsel "with case law." *Id.* at 21. At least in counsel's estimation, he "knows what he's doing. He knows the law." *Id.*

---

[7] Roberson also stipulated "that the factual basis set out [in the plea agreement was] true and accurate in every respect." Doc. 25 at 10.

While § 2255 exists 'to safeguard a person's freedom from detention in violation of constitutional guarantees,' . . . '[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea.' [*Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)]. As a result, 'the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.' *Id.* at 73–74, 97 S.Ct. 1621; *see id.* at 80 n. 19, 97 S.Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing 'only in the most extraordinary circumstances'). 'The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.' *Id.* at 74, 97 S.Ct. 1621.

*Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).

Roberson's "newly minted" allegations that the differences between his indictment and plea agreement on the one hand, and his plea hearing on the other, confused him cannot, standing alone, "mandate an evidentiary hearing in the face of a Rule 11 record detailing statements by the petitioner that" he fully understood the charge he pled guilty to and the elements it contained. *Winthrop–Redin*, 767 F.3d at 1217. What he now asserts, after losing an appeal in which he had every opportunity to contest his plea's validity, "is directly contradicted by

[his] testimony . . . at the guilty plea hearing." *Taylor v. United States*, 2016 WL 742118 at * 6 (S.D. Ga. Feb. 24, 2016), *adopted*, 2016 WL 1047050 (S.D. Ga. Mar. 10, 2016).

Roberson never attempts to explain that discrepancy, or why his "representations at the guilty plea hearing should [be] disregarded," other than to argue that "conclusory responses by Petitioner to the court's inquiry into whether he 'understands' the charge is not sufficient to establish that" he actually understood. *Id*. That's hokum. When a defendant responds "yes, sir," when the Court asks whether he understands the elements as the Court describes them (*see* doc. 44 at 26), that's not a "conclusory," meaningless response entitled to no weight. It's a sworn affirmation of understanding, and unless additional extraordinary circumstances surface, it is decisive in determining whether he in fact understood a given question.

Even if Roberson suffered actual confusion as to the crime he pled to, both crimes -- "during and in relation to," and "in furtherance of" -- expose a defendant to identical sentences -- a five year mandatory

minimum with no statutory maximum.[8]  *See* 18 U.S.C. § 924(c)(1)(A)(i).

Regardless of the precise version of § 924(c) that Roberson was charged

with, then, he was "'fully aware of the direct consequences' of the plea,"

since the sentencing judge explained the possible sentences he faced.

*Bouseley*, 523 U.S. at 619 (quoting *Brady*, 397 U.S. at 755).  In any case,

faced with his sworn affirmation of understanding in an otherwise

thorough and wide–ranging plea colloquy, and unsworn, self–serving

testimony to the opposite effect at a time when Roberson has every

incentive to embellish, *see Winthrop–Redin*, 767 F.3d at 1216, the Court

finds his plea testimony dispositive.  Hence, his unintelligent plea claim

fails on the merits.

It's also procedurally barred.  As noted above, Roberson could have,

but didn't, raise his plea claim on direct appeal (his above-Guidelines

sentence enabled him to escape his plea agreement's appeal waiver).  *See*

---

[8]  Because of the statutory mandatory minimum, the Guidelines sentence for § 924(c) convictions, whether the "during and in relation to" or the "in furtherance of" variety, "is the minimum term required by statute." U.S.S.G. § 2K2.4(b).  Even if the Guidelines prescribed different ranges for the two § 924(c) crimes, they cannot be unconstitutionally vague, at least in this circuit, and thus cannot underlie a lack-of-notice due process claim.  *See United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015).

*Bousley*, 523 U.S. at 621 ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). And "[a] § 2255 motion, it must be remembered, may not be used as a 'surrogate' for a missed direct appeal." *Jones v. United States*, 2015 WL 464243 at * 1 (S.D. Ga. Jan. 28, 2015) (citing *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004)); *see Stone v. Powell*, 428 U.S. 465, 478 n. 10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (footnote added). A procedural default may be overcome if the movant can show "cause excusing his failure to raise the issue previously and prejudice from the alleged error." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Ineffective assistance of counsel (IAC)[9] "may satisfy the cause exception to the procedural bar," though such a claim "must have merit" to qualify. *Id.* at 1344.

---

[9] Long has it been the case that:

Roberson contends that his appellate counsel deficiently performed by failing to raise the unintelligent plea claim he plies here. *See* doc. 46 at 14 ("Had counsel raised the alleged errors on direct appeal, even if reviewed under the plain error standard, there was a reasonable probability that he would have prevailed because he has shown that his substantial rights were prejudiced."). "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013). Attorneys, however, are not required to raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). In fact, the most effective appellate advocates "emphasize [] the

---

[t]o prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064.

*Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1331 (11th Cir. 2016). And prejudice occurs if "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rivers v. United States*, 2016 WL 2646647 at * 1 (S.D. Ga. May 9, 2016) (quoting *Strickland*, 466 U.S. at 687).

importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible or at most on a few key issues." *Id.* at 751–52. It is "only when ignored issues are clearly stronger than those presented [] will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Roberson's unintelligent plea issue isn't "clearly stronger" than those counsel raised on appeal (sentence unreasonableness and an unexplained upward departure from Guidelines recommendation). Indeed, as discussed above, it doesn't even survive preliminary review, which requires dismissal of motions that "plainly appear[]" to merit no relief. Section 2255 Rule 4. Such a claim by definition cannot be "clearly stronger" than issues raised on appeal, much less ones that also failed. *See Roberson*, 615 F. App'x at 648. Roberson's appellate IAC claim therefore also fails.

Accordingly, Travis Antwan Roberson's § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb.

9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

**SO REPORTED AND RECOMMENDED,** this  25th  day of August, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA